UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAH'SUN CREATOR ALLAH,

                                    Plaintiff,
                                                                    9:08-CV-1008
v.                                                                  (NAM/GHL)

TIM KEMP, Office of Mental Health Unit Chief,
Upstate Correctional Facility; WAYNE CROSIER,
Mental Health Social Worker, Upstate Correctional
Facility,

                                    Defendants.
_____

APPEARANCES:                            OF COUNSEL:

KAH'SUN CREATOR ALLAH
99-A-2660
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. ANDREW M. CUOMO                    CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

**<u>REPORT-RECOMMENDATION and ORDER</u>**

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Norman A. Mordue,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

        Currently pending before the Court is Defendants' Motion for Judgment on the Pleadings

pursuant to Federal Rule of Civil Procedure 12(c).[1]  Dkt. No. 14.  Plaintiff opposes the motion.

Dkt. No. 29.[2]

      For the reasons that follow, I recommend that Defendants' Motion for Judgment on the

Pleadings be denied.

## I.     BACKGROUND

      Plaintiff Kah'Sun Creator Allah alleges in his Complaint that his Eighth Amendment

rights were violated during his confinement at Upstate Correctional Facility ("Upstate") during

the period July, 2006 through March, 2007.  Dkt. No. 1.

      Plaintiff arrived at Upstate on July 24, 2006, three days after he was observed at

Downstate Correctional Facility ("Downstate") "putting a noose around his neck attempting

suicide" and confined on "suicide watch".  Dkt. No. 1 ¶ 9.  Plaintiff states that mental health

---

[1]  Defendants filed their Answer on November 17, 2008 and a Mandatory Pretrial Discovery and Scheduling Order was issued.  Dkt. Nos. 10, 11.  Defendants deposed plaintiff on April 6, 2009 and filed the transcript in support of their Motion for Sanctions arising out of plaintiff's refusal to answer questions regarding his criminal record and prison disciplinary history.  *See* Dkt. No. 24.  The deposition transcript is not part of the record before this Court on Defendants' Motion for Judgment on the Pleadings.

[2]  Plaintiff's opposition papers include excerpts from his mental health records.  Dkt. No. 29.  Defendants advised in reply that they have no objection to the Court's consideration of these records.  Dkt. No. 30 at 1.  Defendants object, however, to Plaintiff's request that this motion be converted to a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id*.  As discussed, *infra*, Plaintiff's submissions may be properly considered in addressing Defendants' Motion for Judgment on the Pleadings, and the Court therefore, in the exercise of its discretion, declines to convert the motion to one seeking summary judgment.  *See Avgerinos v. Palmyra-Macedon Central School Dist.*, 08-CV-6572, 2010 U.S. Dist. LEXIS 11988, 2010 WL 547173, at *3 (W.D.N.Y.  Feb. 11, 2010) (federal courts have complete discretion in determining whether to convert a motion to dismiss to one for summary judgment).

      The Court will provide Plaintiff with a copy of each unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

providers at Downstate told him that he had been assigned to the mental health case load and would be seen by mental health staff at Upstate immediately upon his arrival. *Id.* ¶¶ 12-13. Plaintiff's Downstate providers "recommended continued clinical support and individual therapy." *Id.* ¶ 13; Dkt. No. 29 Exs. A-C.

According to Plaintiff, upon his arrival at Upstate, Defendant Tim Kemp, Mental Health Unit Chief, "never seen to it that plaintiff be seen by his mental health staff." Dkt. No. 1 ¶ 15.

On January 23, 2007, Plaintiff "again attempted suicide by tying a noose around his neck and tying it to shower dead [sic]...." *Id.* ¶ 16. Plaintiff's cell-mate intervened and summoned assistance. *Id.* Plaintiff told Defendant Wayne Crosier, Mental Health Social Worker, that "he couldn't take it any more and had nothing to live for and didn't want to live no more." *Id.* ¶ 18. Plaintiff was moved to an observation cell and put on suicide watch. *Id.* ¶ 19. During this time, Plaintiff refused seven meals and was uncommunicative "due to his depression." *Id.* ¶¶ 20, 21. Plaintiff claims that Defendants did not provide for his evaluation by a psychiatrist nor did they otherwise provide him with mental health treatment. *Id.* ¶ 23.

Plaintiff was released from observation on January 25, 2007. *Id.* ¶ 21. Plaintiff was returned to his cell without provision for ongoing mental health care. *Id.* ¶ 23. Plaintiff did not see mental health staff again until March 8, 2007. *Id.*

On March 8, 2007, Plaintiff started hearing voices and attempted suicide by "cutting along his arm severely with a razor causing severe pain and suffering." *Id.* ¶ 24. Correctional officers intervened, and Plaintiff was taken to the facility hospital where his arm wounds were treated. Plaintiff was again taken to an observation cell and placed on suicide watch. *Id.* ¶¶ 26-27.

Plaintiff was moved from the observation cell at Upstate to the Mental Health Satellite Unit at Clinton Correctional Facility on March 12, 2007.  While at Clinton, Plaintiff  was evaluated by Dr. Berggren, diagnosed with "Brief Psychotic Disorder, Psychosis and Adjustment Disorder," and treated with medication.  *Id*. ¶¶ 28-29; Dkt. No. 29 at 4 and Ex. K.

Plaintiff claims that Defendants Kemp and Crosier acted with deliberate indifference in violation of his Eighth Amendment rights in failing to provide Plaintiff with mental health evaluation and treatment upon his arrival at Upstate in July, 2006, and thereafter by returning Plaintiff to his cell two days after his January 23, 2007 suicide attempt without adequate mental health evaluation and treatment.  Dkt. No. 1 at ¶¶ 30-32.  Plaintiff seeks compensatory and punitive damages.

## II.   LEGAL STANDARD GOVERNING MOTIONS FOR JUDGMENT ON THE PLEADINGS

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006).  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

4

court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556-57, 570). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not *shown*-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 (internal citation and punctuation omitted) (emphasis added).

It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994). "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Hernandez,* 18 F.3d at 136; *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir. 2003). In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. *See, e.g., Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) (considering plaintiff's response affidavit on motion to dismiss); *Gadson v. Goord,* 96-CV-7544, 1997 U.S. Dist. LEXIS 18131, 1997 WL 714878, at *1

n. 2 (S.D.N.Y. Nov. 17, 1997).[3]

Thus, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest possible argument that they suggest." *See Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation and citation omitted). Furthermore, when a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).[4]

## III.    ANALYSIS

### A.    Eighth Amendment

Reading the complaint generously, Plaintiff alleges that Defendants failed to provide him with mental health evaluation and treatment during the period July, 2006 to January, 2007, notwithstanding the fact that he had attempted suicide three days before he arrived at Upstate, and despite the fact that Plaintiff's health records advised of his need for such care. Plaintiff further alleges that following his second suicide attempt in January, 2007, Defendants again

---

[3]  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff to amend the complaint once as a matter of right, and otherwise with the court's leave, which should be "freely give[n] ... when justice so requires." Fed.R.Civ.P. 15; *see Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss).

[4]  Of course, an opportunity to amend is not required where the plaintiff has already amended the complaint. *See Advanced Marine Technologies, Inc. v. Burnham Securities, Inc.*, 16 F. Supp.2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once). In addition, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112.

failed to properly evaluate his condition and withheld treatment, leading to a third suicide attempt just two months later.  *See* Dkt. No. 1.

Defendants argue that Plaintiff has made an insufficient showing of an Eighth Amendment claim and that dismissal of the Complaint is warranted as a matter of law.  Dkt. No. 14-1 at pp. 4-8.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle*, 429 U.S. at 102.  Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In fulfilling this duty, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

The duties which fall within the ambit of the Eighth Amendment include both the duty to safeguard inmates from harm, often referred to as the "duty to protect" and the duty to provide medical and mental health care.[5]  Violations of the duty to protect are commonly asserted in cases involving inmate on inmate violence and are analyzed under the Eighth Amendment with

---

[5] "Courts have repeatedly held that treatment of a psychiatric or psychological condition may present a 'serious medical need.'"  *Cuoco,* 222 F.3d at 106 (quoting *Meriwether v. Faulkner,* 821 F.2d 408, 413 (7th Cir. 1987)).

reference to whether the conditions under which the inmate was confined posed an unreasonable risk of harm. *See Snyder v. McGinnis*, 03-CV-902F, 2004 U.S. Dist. LEXIS 17976, 2004 WL 1949472, *4 (W.D.N.Y. Sep. 2, 2004). "The Constitution does not guarantee an assault-free prison environment; it promises only reasonable good faith protection." *McGriff v. Coughlin*, 640 F.Supp. 877, 880 (S.D.N.Y. 1986). As a result, not every injury suffered by an inmate at the hands of another constitutes an Eighth Amendment violation by the prison official responsible for the inmate's safety. *See Farmer*, 511 U.S. at 834. Courts in this Circuit have emphasized that "the standard for prisoner 'failure to protect' claims brought under 42 U.S.C. § 1983 is quite high." *Snyder*, 2004 WL 1949472, at *4 (citations omitted); *Hamilton v. Riordan*, 07 Civ. 7163, 2008 U.S. Dist. LEXIS 69116, 2008 WL 4222089, *1 (S.D.N.Y. Sep. 11, 2008).

Presumably in order to invoke the higher standard of scrutiny applicable to "failure to protect" claims, Defendants refer to the Complaint as alleging a claim "that defendants subjected [Plaintiff] to cruel and unusual conditions of confinement by failing to protect him from himself" on the two occasions when he attempted suicide at Upstate. Dkt. No. 14-1 at 3.[6] While claims involving the risk of suicide have been articulated and addressed as violations of the duty to protect, particularly when asserted against non-medical personnel, "[t]he bulk of cases dealing with the right of a person in custody for protection from suicide analyze the issue as an Eighth Amendment claim dealing with the inadequate provision of medical care." *Kelsey v. City of New York*, 03-CV-5978, 2006 U.S. Dist. LEXIS 91977, 2006 WL 3725543, * 4 n. 5 (E.D.N.Y. Dec.

---

[6] Defendants then address the sufficiency of Plaintiff's claims in terms of "the severity of the conditions under which plaintiff has been incarcerated" and whether he faced a "risk" that was objectively substantial, *see* Dkt. No. 14-1 at 5, rather than whether his mental health need was sufficiently "serious".

18, 2006), *aff'd*, 2009 WL 106374 (2d Cir. 2009).[7]

In this case, the Court is not aware of any reason to characterize Defendants' duty to provide adequate and proper mental health care to Plaintiff as the duty to protect him from himself, or to invoke the "high" standard applicable to claims arising out of inmate on inmate violence.[8]  Accordingly, the Court construes Plaintiff's Eighth Amendment claims as alleging the deprivation of proper and adequate medical care.

A viable Eighth Amendment claim must contain both an objective and a subjective component.  *Farmer*, 511 U.S. at 834.  To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Analyzing the objective element of an Eighth Amendment medical care claim requires two inquiries.  "The first inquiry is whether the prisoner was actually deprived of adequate medical care."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire.  Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'"  *Jones v. Westchester County Dept. of Corrections*, 557 F. Supp.2d 408, 413 (S.D.N.Y. 2008).

---

[7]  *Kelsey* involved a claim that police officers acted with deliberate indifference to an arrestee's safety while he was in their custody, and failed to prevent his suicide.  *Kelsey*, 2006 WL 3725543, at *4.  *See also Burke v. Warren County Sheriff's Dept.*, 1994 U.S. Dist. LEXIS 17233, 1994 WL 675042, *6 (N.D.N.Y. Nov. 25, 1994) (Munson, J.) (jailers are not required to safeguard every inmate; only those presenting a "strong likelihood of suicide" *e.g.*, due to a previous threat or an earlier attempt are entitled to protection).

[8]  The Court notes, however, that its conclusion regarding the sufficiency of the Complaint on Defendants' Rule 12(c) motion would not be altered if Plaintiff's Eighth Amendment claim was assessed pursuant to the standard applicable to "failure to protect" claims.

The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. The focus of the second inquiry depends on whether the prisoner claims to have been completely deprived of treatment or whether he claims to have received treatment that was inadequate. *Id*. If "the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id*. A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

If the claim is that treatment was provided but was inadequate, the second inquiry is narrower. *Salahuddin*, 467 F.3d at 280. For example, "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003).

To satisfy the subjective component of an Eighth Amendment claim, the defendant's behavior must be "wanton."  Where a prisoner claims that a defendant provided inadequate medical care, he must show that the defendant acted with "deliberate indifference."  *Estelle*, 429 U.S. at 105.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance*, 143 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835).  Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-03.  The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511 U.S. at 835.  An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference."  *Estelle*, 429 U.S. at 105-06.  Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment."  *Id.*  Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  However, malpractice that amounts to culpable recklessness constitutes deliberate indifference.  Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan."  *Chance*, 143 F.3d at 703.

Regarding the objective component, the complaint alleges that Defendants failed to

11

provide Plaintiff with mental health evaluation and care upon his arrival at Upstate on July 24, 2006, notwithstanding the notations in his records that he had attempted suicide three days earlier.  Plaintiff further alleges that his need for mental health services remained unmet and that he attempted suicide in January, 2007, and again in March, 2007.

Defendants acknowledge that "death by hanging or self-laceration would obviously be a serious harm."  Dkt. No. 14-1 at 5.  *See Hamilton v. Smith*, No. 06-CV-805, 2009 U.S. Dist. LEXIS 91032, 2009 WL 3199531, *14 (N.D.N.Y. Jan. 13, 2009) (Homer, M.J.) (plaintiff's claimed history of suicidal thoughts sufficient to raise a question of fact as to serious medical need); *White v. Ghost,* 456 F. Supp.2d 1096, 1102-03 (D. Dakota 2006) (two suicide gestures and/or suicide attempts "obviously created an objective serious medical need.").[9]  Defendants argue, however, that the Complaint is subject to dismissal as a matter of law because "based on the circumstances alleged, the risk was not objectively serious" because "OMH staff monitoring [Plaintiff's] status could reasonably discern that he was stable and safe" during the intervals between his suicide attempts.  Dkt. No. 14-1 at 6.

The Court disagrees.  Whatever conclusions might be warranted after the record is developed, accepting the material facts alleged in the Complaint as true, and drawing all inferences in Plaintiff's favor, the Complaint states a plausible claim that Plaintiff's mental health needs were unmet and were, objectively, sufficiently serious.  *See Salahuddin*, 467 F.3d at

---

[9]  Moreover, courts have found that depression with suicidal ideation, or severe anxiety attacks are sufficiently severe conditions to meet the objective element of the deliberate indifference standard.  *Covington v. Westchester County Dept. of Corrections,* 06 Civ. 5369, 2010 U.S. Dist. LEXIS 11020, 2010 WL 572125, *6 (S.D.N.Y. Jan. 25, 2010) (citing cases); *see also Zimmerman v. Burge*, 2009 U. S. Dist. LEXIS 88343, 2009 WL 3111429, *8 (N.D.N.Y. Sep. 24, 2009) (Sharpe, J. & Lowe, MJ) (reviewing published case law discussing whether depression either with or without suicidal ideation is a "sufficiently serious" medical condition).

280.

Regarding the subjective component, the Complaint alleges that Defendants were aware of Plaintiff's July, 2006 suicide attempt and of his need for mental health care, but consciously and intentionally disregarded or ignored that need.  The Complaint further alleges that following the January, 2007 suicide attempt, Defendants again withheld mental health care.

Defendants argue that the Complaint is insufficient as a matter of law because "[p]laintiff's two widely-spaced efforts at suicide at Upstate cannot fairly be regarded as the product of wanton, callous indifference to his medical condition."  Dkt. No. 14-1 at 7.  Rather, Defendants maintain that they "can only be faulted, if at all, for being mistaken in their exercise of psychiatric judgment."  *Id*. at 8.[10]  However, this conclusion presumes the existence of a factual record which does not exist on Defendants' Rule 12(c) motion.  *See Farmer,* 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways...."); *Chance*, 143 F.3d at 703 ("Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.").

The factual allegations in the Complaint, accepted as true, satisfy the subjective component of an Eighth Amendment claim.  *See Chance*, 143 F.3d at 703.[11]

_____

[10]  Defendants cite several cases in which the court concluded either after trial or on a properly supported motion for summary judgment, that the evidence adduced was not sufficient to demonstrate the defendants' subjective culpability.  Dkt. No. 14-1 at 8.  As discussed above, the inquiry on Defendants' Motion for Judgment on the Pleadings is significantly different, the question being limited to whether the complaint states a claim for relief that is "plausible" on its face.  *Iqbal*, 129 S.Ct. at 1949.

[11]  See *Chance*, 143 F.3d at 703-04 (reversing district court's dismissal of medical indifference claim at 12(b)(6) stage because "even if we think it highly unlikely that Chance will

In light of the foregoing, the Court declines to conclude at this stage that Plaintiff has failed to state a claim for deliberate indifference against Defendants. Accordingly, I recommend that Defendants' Motion for Judgment on the Pleadings to dismiss the Eighth Amendment claim be denied.

### B.    Qualified Immunity

Defendants also assert that they are entitled to dismissal of Plaintiff's Complaint on the ground of qualified immunity. Dkt. No. 14-1 at 8-9.

"Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) (quoting *McCardle v. Haddad*, 131 F.3d 43, 50 (2d Cir. 1997)).

The Second Circuit has recognized that the availability of qualified immunity may turn "on factual questions that cannot be resolved at [the motion to dismiss] stage of proceedings." *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002).[12] Thus, where the "objective reasonableness" of Defendants' actions depends at least in part on what information they had regarding the substance of Plaintiff's complaints, an adjudication as to the applicability of the qualified immunity affirmative defense on the basis of the pleadings alone would be

---

be able to prove his allegations, that fact does not justify dismissal for failure to state a claim, for Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ....") (citations and quotation marks omitted).

[12] In *Stephenson*, the court advised that a "defendant should press a qualified immunity defense during pretrial proceedings so that such a claim can be disposed of by summary judgment where possible, or factual disputes material to the defense can be identified and presented to the jury." *Stephenson*, 332 F.3d at 76.

premature.

Here, after liberally reviewing the Complaint, accepting all of its allegations as true, and construing them in Plaintiff's favor, the Court declines to conclude that Defendants are entitled to qualified immunity at this stage.  Plaintiff alleges that Defendants were aware of his need for mental health evaluation and treatment upon his arrival at Upstate in July, 2006, and that mental health services were not provided either before or after his January, 2007 suicide attempt, which was followed by a third attempt in March, 2007, resulting in pain, suffering, and injuries.  Thus, "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation."  *Denton v. McKee*, 332 F. Supp.2d 659, 666 (S.D.N.Y. 2004).[13]

Therefore, Defendants' motion for judgment on the pleadings dismissing the complaint on the ground of qualified immunity should be denied.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' Motion for Judgment on the Pleadings (Dkt. No. 14) be **DENIED**, and it is further

**ORDERED** that the clerk provide copies of *Avgerinos v. Palmyra-Macedon Central School Dist.*, 08-CV-6572, 2010 U.S. Dist. LEXIS 11988, 2010 WL 547173 (W.D.N.Y.  Feb. 11, 2010); *Gadson v. Goord,* 96-CV-7544, 1997 U.S. Dist. LEXIS 18131, 1997 WL 714878 (S.D.N.Y. Nov. 17, 1997); *Snyder v. McGinnis*, 03-CV-902F, 2004 U.S. Dist. LEXIS 17976, 2004 WL 1949472 (W.D.N.Y. Sep. 2, 2004); *Hamilton v. Riordan*, 07 Civ. 7163, 2008 U.S. Dist.

---

[13]  *See McKenna v. Wright,* 386 F.3d 432, 437-38 (2d Cir. 2004) (affirming district court's denial of qualified immunity at motion to dismiss stage on deliberate indifference claim, "[h]owever the matter may stand at the summary judgment stage, or perhaps at trial....").

LEXIS 69116, 2008 WL 4222089 (S.D.N.Y. Sep. 11, 2008); *Kelsey v. City of New York*, 03-CV-5978, 2006 U.S. Dist. LEXIS 91977, 2006 WL 3725543 (E.D.N.Y. Dec. 18, 2006), *aff'd*, 2009 WL 106374 (2d Cir. 2009); *Burke v. Warren County Sheriff's Dept.*, 1994 U.S. Dist. LEXIS 17233, 1994 WL 675042 (N.D.N.Y. Nov. 25, 1994); *Hamilton v. Smith*, No. 06-CV-805, 2009 U.S. Dist. LEXIS 91032, 2009 WL 3199531 (N.D.N.Y. Jan. 13, 2009); *Covington v. Westchester County Dept. of Corrections,* 06 Civ. 5369, 2010 U.S. Dist. LEXIS 11020, 2010 WL 572125 (S.D.N.Y. Jan. 25, 2010); and *Zimmerman v. Burge*, 2009 U. S. Dist. LEXIS 88343, 2009 WL 3111429 (N.D.N.Y. Sep. 24, 2009) to plaintiff.

    Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).


 Dated: February 25, 2010
        Syracuse, New York


George H. Lowe
United States Magistrate Judge

16