UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAH'SUN CREATOR ALLAH,

                        Plaintiff,

                                                                    9:08-CV-1008
v.                                                            (NAM/GHL)

TIM KEMP, Office of the Mental Health Unit Chief,
Upstate Correctional Facility; WAYNE CROSIER,
Mental Health Social Worker, Upstate Correctional
Facility,

                        Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

KAH'SUN CREATOR ALLAH
99-A-2660
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. ANDREW M. CUOMO              CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Norman A. Mordue,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Kah'Sun Creator Allah alleges that Defendants Tim Kemp and Wayne Crosier violated

1

his Eighth Amendment rights by acting with deliberate indifference in failing to provide him with mental health evaluation and treatment.  (Dkt. No. 1 ¶¶ 30-32.)  Currently pending before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(b).  (Dkt. No. 43.)  Plaintiff opposes the motion.  (Dkt. Nos. 29, 46.)  For the reasons that follow, I recommend that Defendants' motion be denied.

I.      BACKGROUND

   A.      Factual Background

Plaintiff Kah'Sun Creator Allah alleges in his Complaint that his Eighth Amendment rights were violated during his confinement at Upstate Correctional Facility ("Upstate") between July 2006 and March 2007.  (Dkt. No. 1.)

In July 2006, Plaintiff was observed at Downstate Correctional Facility ("Downstate") "putting a noose around his neck attempting suicide," and he subsequently was confined to "suicide watch."  (Dkt. No. 1 ¶ 9.)  Plaintiff's Downstate mental health providers placed him on service level four, indicating that he "needs/may need mental health intervention (excluding medication) for disorders such as anxiety, mild depression, adjustment disorders or life circumstance problems."  (Dkt. 47, Ex. A.)  Plaintiff's Screening and Admission Note also stated that he "should be evaluated by mental health upon arrival at his next facility."  *Id.*, Ex. B.  Finally, a July 2006 Termination Transfer Progress Note stated that Plaintiff "needs to be seen by M.H. upon arrival" at Upstate.  *Id.*, Ex. C.

Upstate serves as a housing facility for "inmates serving disciplinary dispositions specifying assignment to a Special Housing Unit."  (Dkt. No. 43-8 ¶ 3.)  Under the Central New York Psychiatric Center's Outpatient Operations Policy and Procedure Manual ("Manual"),

within thirty days of a service level four inmate's "admission to the Special Housing Unit, an OMH clinician must conduct a personal interview" with the inmate. (Dkt. 47, Ex. D.) Inmates on the "mental health active patient caseload" at the time of their admission are to be seen by an OMH clinician who "completes a SHU screening/admission form and a treatment needs/service level designation form." *Id.* In or about July or August 2006, Plaintiff was transferred to Upstate where he remained at service level four. (Dkt. No. 43-6 ¶ 6.)

The Manual states that every service level four inmate "should be offered a minimum of one (1) private confidential session a month with a primary therapist." (Dkt. No. 47 at 24, Ex. D.) A psychiatrist "should also have one (1) private/confidential session at least quarterly (every 90 days) for all active inmates on the caseload regardless of OMH service level designation". *Id.*

Defendant Crosier, an OMH Social Worker, evaluated Plaintiff on November 20, 2006. (Dkt. No. 44 at 353.) Defendant Crosier's evaluation stated that Plaintiff had "[n]o indication for active mental health services," and that Plaintiff had "[n]o thoughts or intent of suicide or self-harm." *Id.*

On January 23, 2007, Plaintiff "again attempted suicide by tying a noose around his neck and tying it to the shower dead [sic] . . . ." (Dkt. No. 1 ¶ 16.) Plaintiff's cell-mate intervened and summoned assistance. *Id.* Plaintiff told Defendant Crosier that "he couldn't take any more and had nothing to live for and didn't want to live no more." *Id.* ¶ 18. Plaintiff was moved to an observation cell and put on suicide watch. *Id.* ¶ 19. Plaintiff claims that Defendants did not provide for his evaluation by a psychiatrist or provide other mental health treatment. *Id.* ¶ 23. Plaintiff was released from observation on January 25, 2007, and returned to his cell without provision for ongoing mental health care. *Id.* ¶ 21. Before returning Plaintiff to his cell,

3

Defendant Crosier evaluated Plaintiff and indicated that Plaintiff presented as "happy (smiling)" and that he appeared "to be bored . . . with staying in the infirmary." (Dkt. No. 43-7 ¶ 10; Dkt. No. 44 at 357.)  Defendant Crosier "discontinued [Plaintiff] from special watch and from active screening status," but Plaintiff remained at service level four.  (Dkt. No. 43-7 ¶ 10; Dkt. No. 44 at 357.)

Plaintiff did not see mental health staff again until March 8, 2007 after he started hearing voices and attempted suicide by "cutting along his arm severely with a razor causing severe pain and suffering." (Dkt. No. 1 ¶ 24.)  Correctional officers intervened, and Plaintiff was taken to the facility hospital where his arm wounds were treated.  *Id.* ¶¶ 25-27.  Plaintiff was again taken to an observation cell and placed on suicide watch.  *Id.* ¶ 27.

Plaintiff claims that Defendants Kemp and Crosier acted with deliberate indifference in violation of his Eighth Amendment rights in failing to provide Plaintiff with mental health evaluation and treatment.  (Dkt. No. 1 ¶¶ 30-32.)  Plaintiff sues each of the Defendants in their "individual and official capacities." *Id.* ¶¶ 3-4.  Plaintiff seeks (1) a declaration that Defendants violated his Eighth Amendment rights; (2) compensatory and punitive damages; and (3) other relief as may be warranted.  (Dkt. No. 1 at 5-7.**)**

  **B.**  **Summary of Grounds in Support of Defendants' Motion**

Defendants argue that (1) the Eleventh Amendment bars Plaintiff's claims against them in their official capacities;[1] (2) Plaintiff cannot prevail on his Eighth Amendment inadequate

---

[1] Although the Complaint explicitly states that Defendants are being sued in their official capacities (Dkt. No. 1 ¶¶ 3-4), Defendants do not explicitly move to dismiss on Eleventh Amendment sovereign immunity grounds.  Defendants, however, state in a footnote that Eleventh Amendment sovereign immunity bars any suit against the Defendants in their official capacities.  (Dkt. 43-1 at 3 n.1.)

medical care claim because Defendants were not deliberately indifferent to a serious medical need; (3) Plaintiff does not allege sufficient personal involvement on the part of Defendant Kemp;[2] and (4) Defendants are entitled to qualified immunity. (Dkt. No. 43-1.)

### C. Summary of Plaintiff's Response to Defendants' Arguments

In response,[3] Plaintiff argues that (1) Defendants' failure to provide Plaintiff with mental health evaluation and treatment upon his arrival at Upstate constituted deliberate indifference and (2) Defendants are not entitled to qualified immunity. (Dkt. No. 47.) Plaintiff has not responded to Defendants' argument that the Eleventh Amendment bars Plaintiff's claims against Defendants in their official capacities or Defendant Kemp's argument that he was not personally involved in any alleged constitutional violations.

## II. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. Only after the moving party has met this burden is the non-moving party required to

---

[2] For the purposes of Defendants' motion, Defendant Crosier concedes that he was "personally involved" in Plaintiff's "mental health care during the relevant period of time." (Dkt. No. 43-1 at 7; Dkt. 43-7 ¶ 2.)

[3] The Court granted the Plaintiff's request to have his Memorandum of Law in opposition to the Defendants' Motion for Judgment on the Pleadings (Dkt. No. 29) serve as his Memorandum of Law in opposition to Defendants' Motion for Summary Judgment. (Dkt. No. 46.)

produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).

The nonmoving party must do more than "rest upon the mere allegations . . . of his pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact[4] exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).

Under Local Rules 7.1(a) and 56.1, a motion for summary judgment must be accompanied by a memorandum of law, an affidavit containing only factual and procedural background relevant to supporting the motion, and a Statement of Material Facts. The "opposing party must file a response to the Statement of Material Facts," which mirrors the "movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth any additional material facts that the non-movant contends are in dispute". L.R. 7.1(a)(3). The Court will "deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.*

The Court granted Plaintiff's request that his Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings (Dkt. No. 29) serve as his Memorandum of

---

[4] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

Law in response to the pending summary judgment motion. (Dkt. Nos. 45-46.) Although Plaintiff did not provide an affidavit as required by Local Rule 7.1(a)(2), he has provided a response to Defendants' Statement of Material Facts. (Dkt. No. 48.) The Court notes that this response is not in full compliance with Local Rules 7.1(a)(3) and 56.1 because the response does not mirror Defendants' Statement of Material Facts "by admitting and/or denying each of [the Defendants'] assertions." The response, however, addresses each of the paragraphs in Defendants' statement, and the response provides citations to the record. (Dkt. No. 48.)

In this Circuit, a district court has broad discretion in determining whether to overlook a party's failure to comply with local court rules. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citing *Wright v. BankAmerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000)). Thus, a district court, in its discretion, may "conduct an assiduous review of the record" even where one of the parties has failed to file a Local Rule 56.1 statement. *Id.* (quoting *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000)). Moreover, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Accordingly, I recommend that the Court exercise its discretion and overlook Plaintiff's failure to fully comply with the local rules.

### III.   ANALYSIS

#### A.   Claims Against Defendants in Their Official Capacities

Plaintiff's complaint named Defendants "in their individual and official capacities." (Dkt. No. 1 ¶¶ 3-4.) Under the principle of sovereign immunity, the Eleventh Amendment bars a citizen from bringing a suit against his or her own state in federal court. *See Tenn. Student*

*Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004); *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 267 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *see also* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by another State, or by Citizens or Subjects of any Foreign State."). State immunity extends not only to the states but also to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993).

OMH is an agency of the State of New York. *See* N.Y. Mental Hyg. Law § 7.01. Thus, as an arm of the state, OMH and its employees acting in their official capacities are entitled to immunity. *See Limwongse v. NYS Office of Mental Health*, 249 F. App'x 862, 862-63 (2d Cir. 2007);[5] *McChesney v. Hogan*, No. 9:08-CV-0163 (FJS/DEP), 2010 WL 3602660, at *4, 2010 U.S. Dist. LEXIS 92948, at *14-15 (N.D.N.Y. Aug. 17, 2010)[6] (Peebles, Mag. J.) (holding that sovereign immunity protects OMH employees who are sued in their official capacities). A federal court must dismiss an action where a defendant demonstrates successfully that he is entitled to sovereign immunity because the court lacks subject matter jurisdiction over such an action. *McGinty v. New York*, 251 F.3d 84, 100 (2d Cir. 2001); *see also* Fed. R. Civ. P. 12(h)(3).

Here, the Complaint states that the Defendants are sued in their "individual and official capacities." (Dkt. No. 1 ¶¶ 3-4.) Although Defendants do not explicitly move to dismiss on sovereign immunity grounds, they note that sovereign immunity bars the suit against the

---

[5] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

[6] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Defendants in their official capacities. (Dkt. No. 43-1 n.3.) To the extent that Defendants neglected to move explicitly to dismiss on sovereign immunity grounds, I recommend that the Court *sua sponte* dismiss any claims against Defendants in their official capacities. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

   **B.**  **Defendant Kemp's Personal Involvement**

  Defendant Kemp argues that he is "written into the action only by virtue of his supervisory role as Mental Health Unit Coordinator at Upstate," and not through his personal involvement in the alleged constitutional violations. (Dkt. 43-1 at 9.) A defendant's personal involvement "in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)). To prevail, the plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Where a defendant is a supervisory official a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e. under the doctrine of *respondeat superior*) is insufficient to show his personal involvement in that unlawful conduct. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

  Supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate

9

indifference to the rights of inmates by failing to act on information indicating that violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir.1986)).[7]

During the time in question Defendant Kemp was the Forensic Unit Coordinator at OMH. (Dkt. No. 43-8 ¶ 1.) He had "administrative authority" over Defendant Crosier but Defendant Kemp claimed that he "did not become personally involved in [Defendant Crosier's] work with assigned inmates." *Id.* ¶ 8. However, in daily treatment meetings, Defendant Kemp and his staff, including Defendant Crosier, "discussed operational issues and inmates who were presenting particular needs," which included Plaintiff's case. (*Id.* ¶¶ 6, 11.) Defendant Kemp asserts that neither he nor anyone on his team disagreed with Defendant Crosier's clinical judgment, and that he would have "pursued" a "higher level of services" had Plaintiff's circumstances required them. (*Id.* ¶ 11.) By Defendant Kemp's own declaration, he, at the very least, discussed Plaintiff's case with Defendant Crosier. ( *Id.* ¶¶ 6,11.)

Moreover, Defendant Kemp "believes" that his "first personal interaction with" Plaintiff occurred immediately following Plaintiff's March 8, 2007 suicide attempt. *Id.* ¶ 12. But Plaintiff, in his deposition, recalls that both Defendants visited him in his observation cell following the January 2007 suicide attempt. Dkt. No. 43-13 at 21, 23. This statement is not disputed anywhere in Defendants' papers supporting their summary judgment motion. As such, I find that it is possible for a reasonable jury to conclude that Defendant Kemp's involvement in

---

[7] The Supreme Court's decision in *Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937 (2009), arguably casts in doubt the continued viability of some of the categories set forth in Colon. *See Sash v. United States*, 674 F. Supp. 2d 531 (S.D.N.Y. 2009). Here, the Court will assume *arguendo* that all of the *Colon* categories apply.

this matter rises beyond mere supervisory authority and that he was personally involved in any alleged constitutional violations. Accordingly, I recommend that Defendant Kemp's motion for summary judgment on the grounds of lack of personal involvement be denied.

    **C.**    **Eighth Amendment Claims**

Plaintiff alleges that Defendants failed to provide him with mental health evaluation and treatment during the period of July 2006 through January 2007 even though Plaintiff had attempted suicide three days before he arrived at Upstate and despite the fact that his mental health records advised of his need for such care. (Dkt. No. 1.) Further, Plaintiff alleges that after his second suicide attempt in January 2007, Defendants failed to properly evaluate his condition and withheld treatment, leading to a third suicide attempt just two months later. *Id.*

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious

medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

        1.     Serious Medical Condition

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (citations omitted), *accord*, *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03. This "inquiry must be tailored to the specific circumstances of each case." *Smith*, 316 F.3d at 185.

In this Circuit, "psychiatric or mental health care 'is an integral part of medical care' and falls under the rule laid out in *Estelle* which requires that such care be provided to prisoners." *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 408 (S.D.N.Y. 2005) (quoting *Langley v. Coughlin* (*Langley II*), 888 F.2d 252, 254 (2d Cir. 1989)). This Court has previously surveyed case law around the country and found that "in the context of suicide, jailers are not required to safeguard every inmate; only those presenting a 'strong likelihood of suicide' are entitled to

protection." *Burke v. Warren County Sheriff's Dep't*, No. 900-CV-597, 1994 WL 675042, at *6, 1994 U.S. Dist. LEXIS 17233, at * 19-20 (N.D.N.Y. Nov. 25, 1994)[8] (internal citations omitted). "[T]o establish a strong likelihood of suicide, a detainee must have made a previous threat of or an earlier attempt at suicide." *Id.*

Here, the record reflects at least two incidents where Plaintiff fashioned and displayed a noose. (Dkt. No. 1 ¶¶ 9, 16; Dkt. No. 29, Exs. B, E; Dkt. No. 43-6 ¶¶ 5, 10; Dkt. No. 43-7 ¶¶ 8-9; Dkt. No. 43-8 ¶ 10; Dkt. No. 44 at 355, 386, 392.) Defendants referred to these incidents as attention-getting "suicidal gestures." (Dkt. No. 43-1 at 10-11, 15; Dkt No. 43-7 ¶ 8; Dkt. No. 43-8 ¶ 10; Dkt. No. 49.) Plaintiff, however, considers each of these incidents as "suicide attempts." (Dkt. No. 48 ¶¶ 6, 11-12, 16.) I find that a reasonable jury could disagree with Defendants' characterization of these incidents as merely "suicidal gestures," intending nothing more than to draw the attention of prison officials and OMH staff. Therefore, because the summary judgment standard requires the Court to resolve all ambiguities and draw all reasonable inferences against the moving party, I find that there are factual issues on whether Plaintiff suffered from a sufficiently serious medical need.

  2.  <u>Deliberate Indifference</u>

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "[M]ere disagreement over the proper treatment does not create a

---

[8] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*

Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.*

Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*; *Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). However, malpractice that amounts to culpable recklessness constitutes deliberate indifference. Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance*, 143 F.3d at 703. As such, in a summary judgment motion, the critical question is whether a reasonable jury could conclude that Defendants "knew of and disregarded an excessive risk to [Plaintiff's] health and safety and that [Defendants were] both aware of facts from which the inference could be drawn that a substantial

risk of serious harm existed, and also drew the inference." *Caiozzo*, 581 F.3d at 72 (internal quotation marks and alterations omitted).

In an inmate suicide context, there are two scenarios where deliberate indifference may exist. *See Kelsey v. City of New York*, 2006 WL 3725543, at *5, 2006 U.S. Dist. LEXIS 91977, at *16 (E.D.N.Y. Dec. 18, 2006)[9] (citing *Rellergert v. Cape Girardeau County, Mo.*, 924 F.2d 794, 796 (8th Cir. 1991)). First, "officials could be deliberately indifferent to the risk of suicide by failing to discover an individual's suicidal tendencies." *Id.* Second, officials "could have discovered and have been aware of the suicidal tendencies, but could be deliberately indifferent in the manner by which they respond to the recognized risk of suicide." *Id.* The second scenario "focuses on the adequacy of preventive measures." *Id.*

Courts "have repeatedly noted that while one isolated failure to treat, without more, is ordinarily not actionable, it may in fact rise to the level of a constitutional violation if the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence in the failure to render meaningful treatment." *Langley v. Coughlin* (*Langley I*), 715 F. Supp. 522, 536 (S.D.N.Y. 1989) (citing *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)). Further,

> while a single instance of medical care denied or delayed, viewed in isolation, may appear to be the product of mere negligence, repeated examples of such treatment bespeak a deliberate indifference by prison authorities to the agony engendered by haphazard and ill-conceived procedures. Indeed, it is well-settled in this circuit that "a series of incidents closely related in time . . . may disclose a pattern of conduct amounting to deliberate indifference to the medical needs of prisoners."

---

[9] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

15

*Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977) (quoting *Bishop v. Stoneman*, 508 F.2d 1224, 1226 (2d Cir. 1974)).  Finally, "a serious failure to provide needed medical attention when defendants are fully aware of that need could well constitute deliberate indifference, even if they did not act with a punitive intent."  *Langley v. Coughlin* (*Langley I*), 715 F. Supp. 522, 536 (S.D.N.Y. 1989) (citing *Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134, 144-45 (2d Cir. 1981), *cert. denied*, 464 U.S. 864 (1983)).

After a review of the record, this Court finds that a reasonable jury viewing the evidence in the light most favorable to Plaintiff could conclude that Defendants acted with deliberate indifference to Plaintiff's serious medical needs.  Following Plaintiff's July 2006 suicide attempt at Downstate, he was evaluated by Social Worker Sueann Smith ("Smith") and Dr. Srinvasa Reddy ("Reddy").  (Dkt. No. 1 ¶ 11; Dkt. No. 47, Exs. A-C.)  Smith assigned Plaintiff to service level four and recommended that Plaintiff "be evaluated by mental health upon arrival at" Upstate.  (Dkt. No. 47, Exs. A-B.)  Plaintiff arrived at Upstate in or about July or August 2006 where he remained at service level four.  (Dkt. No. 44 at 1; Dkt. No. 43-6 ¶ 6.)  Defendants state that Plaintiff would have been placed under Defendant Crosier's care shortly after Plaintiff's arrival.  (Dkt. No. 43-6 ¶ 7; Dkt. No. 43-7 ¶ 3; Dkt. No. 43-8 ¶ 9.)  But the earliest indication in the record of Defendant Crosier's evaluation of Plaintiff was in November 2006, approximately three to four months after Plaintiff's arrival at Upstate.[10]  (Dkt. No. 44 at 353.)  On that

---

[10] Plaintiff's OMH Record contains a Mental Health Evaluation signed by Defendant Crosier on November 20, 2006.  (Dkt. No. 44 at 353.)  Although the Chronological Record of Plaintiff's transfers (Dkt. No. 44 at 1-4) indicates that he was on service level four on August 15, 2006, there is no accompanying Mental Health Evaluation.  Without one, it is unclear if Plaintiff was placed on service level four based on the recommendation of the Downstate therapists or if there was another evaluation upon his arrival at Upstate.  Thus, viewing the record in the light most favorable to Plaintiff, it is reasonable to conclude that his earliest evaluation by a therapist at

16

evaluation, Defendant Crosier stated that Plaintiff had no "indication for active mental health services" and that he had no "thoughts or intent of suicide."

The next documented evaluation of the Plaintiff occurred after his suicide attempt of January 23, 2007, when Defendant Crosier placed Plaintiff on active screening status. (Dkt. No. 44 at 348, 350.)  The very next day, Defendant Crosier removed Plaintiff from active screening status and returned him to his cell. (Dkt. No. 43-7 ¶ 10; Dkt. No. 44 at 349, 351, 357.)  The January 24 evaluation stated: "No mental health issues reported or observed.  Presents as happy (smiling) when informed he will be returning to his cell.  Appears to be bored at this time with staying in the infirmary." (Dkt. No. 44 at 351, 357.)  Defendant Crosier submits that he removed Plaintiff from active screening status based on personal "perceptions," "observations," and "reasonable judgment." (Dkt. No. 43-7 ¶ 10.)  The next documented evaluation of Plaintiff occurred after the March 8, 2007, suicide attempt when Defendant Kemp evaluated Plaintiff on March 9 and March 14. (Dkt. No. 44 at 18, 19.)  The record does not show any other evaluations of Plaintiff between November 20, 2006 and January 23, 2007, or between January 24, 2007, and March 8, 2007.  Moreover, Plaintiff argues that neither Defendants nor anyone else from OMH visited him after he returned to his regular cell. (Dkt. No. 43-13 at 36-37, 42; Dkt. No. 48 ¶ 14.)  Defendants have not addressed this argument.

Defendants argue that Plaintiff's OMH record of non-lethal suicidal gestures indicated to them that he did not need more extensive mental health assistance. (Dkt. No. 43-1 at 10-11, 15; Dkt. No. 43-7 ¶ 8; Dkt. No. 43-8 ¶ 10).  Certainly, Defendants' conclusion could be reasonable in light of Plaintiff's OMH history, but when viewing the evidence in the light most favorable to

---

Upstate was on November 20, 2006.

Plaintiff, the record is insufficient to show that no genuine issues of material fact exist. For example, even if Defendants did not have any intent to harm Plaintiff, a reasonable jury could conclude that Defendants were deliberately indifferent to Plaintiff's serious medical needs, which is all that is required to show an Eight Amendment violation. *See Doe*, 649 F.2d at 144-45 (test is indifference, not harm). Likewise, whether Defendant Crosier's professional judgment to remove Plaintiff from an observation cell and active screening status forty-eight hours after a suicide attempt was a result of Defendant Crosier's deliberate indifference to Plaintiff's serious medical needs or mere negligence, or whether it was medically sound, remains an issue of material fact. Accordingly, I recommend that Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claim be denied.

### D.    Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. (Dkt. No. 43-1 at 14.) The affirmative defense of qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) (quoting *McCardle v. Haddad*, 131 F.3d 43, 50 (2d Cir. 1997)).

A qualified immunity inquiry in prisoner civil rights cases generally involve two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." The right to be free from deliberate indifference to serious medical needs is a clearly established constitutional right. *LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998) (citing *Estelle*, 429 U.S. at 104). But whether particular acts are objectively

18

reasonable, however, is a highly fact-specific inquiry.  *See Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).  Thus, the defense is unavailable and summary judgment is inappropriate where "the objective reasonableness of defendants' actions turns on disputed questions of fact."  *Id.* at 927.  To establish the qualified immunity defense, defendants "must show that it was 'objectively reasonable' . . . for them to believe that they had not acted with the requisite deliberate indifference."  *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004) (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)).

As I discussed above, a reasonable jury could conclude that Defendants acted with deliberate indifference in failing to provide proper mental health services to Plaintiff.  Likewise, a reasonable jury could also conclude that it was not objectively reasonable for Defendants to believe that they had not acted with the requisite deliberate indifference.  Accordingly, I recommend that Defendants' motion for summary judgment on qualified immunity grounds be denied.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Defendants' motion for summary judgment (Dkt. No. 43) be <u>**DENIED**</u>, and it is further

**ORDERED** that the clerk provide copies of *Limwongse v. NYS Office of Mental Health*, 249 F. App'x 862 (2d Cir. 2007); *McChesney v. Hogan*, No. 9:08-CV-0163 (FJS/DEP), 2010 WL 3602660, 2010 U.S. Dist. LEXIS 92948 (N.D.N.Y. Aug. 17, 2010); *Kelsey v. City of New York*, No. 03-CV-597, 2006 WL 3725543, 2006 U.S. Dist. LEXIS 91977 (E.D.N.Y. Dec. 18, 2006); *Burke v. Warren County Sheriff's Dep't*, No. 900-CV-597, 1994 WL 675042, 1994 U.S.

Dist. LEXIS 17233 (N.D.N.Y. Nov. 25, 1994) in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: November 9, 2010
Syracuse, New York

_____
George H. Lowe
United States Magistrate Judge